UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

REMILIENNE LINDOR,

    Plaintiff,

Case No.: 8:25-cv-3115

v.

AMERICAN CRUISE LINES, INC.,

    Defendant.

_____

## COMPLAINT AND JURY DEMAND

**COMES NOW** Plaintiff, Remilienne Lindor, by and through undersigned counsel, and files this Complaint against Defendant, American Cruise Lines, Inc., and alleges as follows:

1. This is a civil action for damages arising from sexual harassment, quid pro quo sexual harassment, retaliation, and a retaliatory hostile work environment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII").

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 42 U.S.C. § 2000e-5(f)(3).

3. Venue is proper in the Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. § 1391(b) because Defendant conducts substantial business in this District, operating cruise departures from St. Petersburg, Florida.

4. All conditions precedent to the institution of this lawsuit have been satisfied, including the timely filing of a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations, and the receipt of a Notice of Right to Sue from the EEOC dated August 28, 2025, attached hereto as Exhibit A.

5. Plaintiff Remilienne Lindor is an adult resident of Lehigh Acres, Lee County, Florida, within the Middle District of Florida.

6. At all times material hereto, Plaintiff was an employee of Defendant within the meaning of Title VII.

7. Defendant American Cruise Lines, Inc. is a Connecticut corporation with its principal place of business located at 741 Boston Post Road, Suite 200, Guilford, Connecticut 06437.

8. At all times material hereto, Defendant was Plaintiff's employer within the meaning of Title VII.

9. At all times material hereto, Defendant was an employer engaged in an industry affecting commerce and had fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and is therefore subject to the provisions of Title VII.

10. Defendant conducts substantial and systematic business in the Middle District of Florida, including operating multiple cruise departures from St. Petersburg, Florida, with over 110 scheduled sailings from that port.

## ADMINISTRATIVE EXHAUSTION

11. On or about October 23, 2024, Plaintiff timely filed a Charge of Discrimination with the EEOC and the Florida Commission on Human Relations, Charge No. 551-2025-00498, alleging sex discrimination, sexual harassment, and retaliation.

12. On August 28, 2025, the EEOC issued Plaintiff a Notice of Right to Sue, informing Plaintiff of her right to file a civil action within ninety (90) days.

13. This Complaint is timely filed within ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue.

14. All administrative prerequisites to filing this action have been satisfied.

## STATEMENT OF FACTS

**Employment History:**

15. Plaintiff began working for Defendant as a housekeeper on or about May 27, 2024.

16. Plaintiff was assigned to work aboard Defendant's vessel, the American West, which travels the Columbia Snake River between Oregon and Washington.

17. Plaintiff's direct supervisor was Isaac Thomas (known as "Stubbs"), who held the position of Housekeeping Manager.

18. Stephen Demny served as the Hotel General Manager aboard the American West.

19. As a housekeeper, Plaintiff's duties included cleaning guest staterooms and public areas of the vessel.

**The Harassment Begins:**

20. During the first week of July 2024, Stubbs began subjecting Plaintiff to unwelcome sexual harassment.

21. Stubbs touched Plaintiff's lower back above her buttocks without her consent.

22. Stubbs made sexually suggestive comments to Plaintiff, including statements that someone would need to "restrain him" because he could not keep his hands off Plaintiff's body.

23. Stubbs made additional inappropriate comments about Plaintiff's body and what he would like to do with her body.

24. These comments and physical touching were unwelcome, offensive, and created a hostile and intimidating work environment for Plaintiff.

**The Quid Pro Quo Harassment:**

25. On or about July 4, 2024, Stubbs approached Plaintiff and touched her shoulder while making sexually suggestive comments.

26. During this encounter, Stubbs explicitly stated to Plaintiff: "If you ever need anything, come see me as it's a favor for a favor."

27. This statement, coupled with the unwanted physical touching and prior sexual comments, constituted a clear quid pro quo sexual advance, conditioning workplace benefits on Plaintiff's submission to sexual advances.

28. Plaintiff immediately rejected Stubbs' advance by brushing his hand off her shoulder and refusing to engage with his inappropriate conduct.

29. Plaintiff considered both the touching of her shoulder and the touching of her lower back near her buttocks to constitute sexual assault.

**Plaintiff Reports the Harassment:**

30. Plaintiff reported Stubbs' harassment to higher management, including Hotel General Manager Stephen Demny and the vessel's Captain.

31. When Plaintiff reported the harassment, management laughed at her and treated the situation as a joke, failing to take her complaints seriously.

32. Plaintiff also reported the incidents to Defendant's corporate office through the "Crewing" department.

33. Despite Plaintiff's complaints, Defendant failed to take prompt and effective remedial action to stop the harassment.

34. The investigation conducted by Defendant was inadequate and biased. Defendant interviewed Stubbs and four crew members, but dismissed the corroborating testimony of Plaintiff's witness merely because she was Plaintiff's friend and roommate.

35. Rather than disciplining Stubbs or removing him from his supervisory position over Plaintiff, Defendant merely told Stubbs to "stay away" from Plaintiff and only interact with her during group meetings.

36. This inadequate response failed to protect Plaintiff from ongoing harassment and retaliation.

**Stubbs had a similar quid pro quo arrangement with Plaintiff's coworker:**

37. Defendant was aware that Stubbs had previously been investigated and disciplined for sexually harassing other female employees prior to the incidents involving Plaintiff.

38. Stubbs's prior discipline was related to, among other things, him being caught having intercourse with Plaintiff's coworker, Quianna.

39. Stubbs and Quianna's affair was a frequent topic of discussion amongst both crew and managers. In fact, certain managers and crew had shared videos of Stubbs and Quianna having intercourse.

40. After being previously separated from Quianna, Stubbs was brought back to the same ship as Quianna because of manager staffing shortages.

41. Stubbs and Quianna resumed their quid pro quo relationship once they were reunited. Quianna continued to enjoy favorable treatment.

42. Multiple coworkers of Plaintiff submitted the video evidence to "crewing" and complained that Quianna would get special treatment and favorable employment terms.

43. Defendant took no action.

44. Despite this knowledge of Stubbs' pattern of sexual harassment, Defendant failed to take adequate precautions to protect Plaintiff and other female employees from his predatory conduct.

5

45. Defendant's failure to remove Stubbs from his supervisory position, despite his history of sexual harassment, demonstrates deliberate indifference to the safety and wellbeing of female employees under his supervision.

**The Retaliation Begins:**

46. Immediately after Plaintiff rejected Stubbs' sexual advances and reported his harassment, Stubbs began retaliating against her.

47. Stubbs removed Plaintiff's refrigerator from her crew quarters, which she needed for storing food and medicine.

48. Immediately after Plaintiff rejected the advance by brushing his hand off her back, she experienced additional work and disparate treatment from Stubbs.

49. Stubbs removed access to the microwave that Plaintiff used to heat her meals.

50. Stubbs assigned Plaintiff a significantly heavier workload than other housekeepers, requiring her to clean 12 guest staterooms plus the largest public spaces (the river lounge), while other housekeepers were assigned only 7-8 rooms with three of them having no public space assignments.

51. Stubbs required Plaintiff to work during her scheduled breaks, forcing her to work until 4:15 PM when her break was scheduled from 3:00 PM to 5:00 PM.

52. On one occasion, when Plaintiff stepped outside for less than three minutes during her break, Stubbs came outside and yelled at her.
    a. Plaintiff expressed extreme distress and fear to management and crewing that if she continued to speak up, she would be "singled out even more," and requested that the situation be handled anonymously.

    b. On July 6, 2024, the "Crewing" department acknowledged receipt of Plaintiff's email, assured her that her concerns would be handled with "urgency and care," and that the information was escalated to their Manager. This assurance proved to be false, given the subsequent adverse actions taken against Plaintiff.

53. Quianna also harassed Plaintiff because she had reported Stubbs.

54. These adverse actions were taken in direct retaliation for Plaintiff's rejection of Stubbs' sexual advances and her complaints about his harassment.

55. The retaliatory conduct created an increasingly hostile and intolerable work environment for Plaintiff.

**Management's Complicity in the Retaliation:**

56. When Plaintiff reported the retaliation to Hotel General Manager Stephen Demny, he failed to take corrective action.

57. In fact, Demny and other managers made statements indicating they supported Stubbs' conduct and believed Plaintiff should simply "push through" the situation.

58. Managers gossiped about Plaintiff's harassment complaint, with one manager stating to another employee, "I do not believe her. Isaac is a great dude."

59. The Hotel Manager dismissed Plaintiff's complaints by stating, "'if y'all don't like it then this isn't the place for you'".

60. This response by management further contributed to the hostile and retaliatory work environment.

61. On July 8, 2024, Stephen Demny sent an email requesting that Plaintiff be transferred due to what he characterized as "baseless accusations" and complaints that were allegedly "creating

7

a toxic work environment." Demny was personally aware of Stubbs quid pro quo relationship with Quianna.

62. This email demonstrates that management blamed Plaintiff for reporting harassment rather than addressing the harasser's conduct.

**Plaintiff's Hospitalization:**

63. The severe stress and anxiety caused by the ongoing harassment and retaliation took a devastating toll on Plaintiff's physical and mental health.

64. On July 9, 2024, while the vessel was docked in Hood River, Oregon, Plaintiff was hospitalized due to extreme anxiety, stress, fatigue, and malaise directly related to the sexual harassment and retaliation she experienced in the workplace.

65. Following her hospitalization, Defendant's corporate office booked Plaintiff a flight to return to her home in Florida, telling her it was "for her safety."

66. Defendant assured Plaintiff that she was not being terminated and that she would receive a new assignment.

67. Despite these assurances, Defendant never reassigned Plaintiff to another vessel or position.

68. Plaintiff made repeated requests via email and voicemail for a new assignment, but Defendant ignored these communications and never provided Plaintiff with another work assignment.

69. Defendant's failure to reinstate Plaintiff to her position or provide her with a new assignment constitutes actual termination of Plaintiff's employment.

70. Plaintiff's termination was in retaliation for her complaints of sexual harassment and her rejection of Stubbs' quid pro quo sexual advances.

    a. Stubbs and the hotel manager claimed the refrigerator was a "safety hazard" yet failed to remove refrigerators from officers and other crew members. Plaintiff needed the

      refrigerator because she has a health condition requiring her to eat before taking a prescription.

   b. Stubbs cut the cord on the employee microwave, making the last meal access time 4:15 PM, causing further distress to Plaintiff regarding her health condition.

71. The official reason given for Plaintiff's termination was "performance," which is pretextual.

72. Plaintiff had never been informed that her job was in jeopardy due to performance issues until after she reported the harassment, demonstrating that the stated reason for termination was a pretext for unlawful retaliation.

## COUNT I
## HOSTILE WORK ENVIRONMENT SEXUAL HARASSMENT
**(Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.)**

73. Plaintiff incorporates as though realleged paragraphs 1 – 72 of the Complaint.

74. Plaintiff is a member of a protected class based on her sex (female).

75. Plaintiff was subjected to unwelcome sexual harassment by her direct supervisor, Isaac Stubbs, including:

   a. Unwanted touching of her lower back above her buttocks;

   b. Unwanted touching of her shoulder;

   c. Sexually suggestive comments about Plaintiff's body;

   d. Comments that someone would need to "restrain" Stubbs because he could not keep his hands off Plaintiff's body; and

   e. Other sexually explicit comments about what Stubbs wanted to do with Plaintiff's body.

76. This harassment was based on Plaintiff's sex.

   a. Stubbs had also been observed inappropriately touching another coworker's butt in a vacant room.

9

77. The harassment was sufficiently severe and pervasive to alter the terms and conditions of Plaintiff's employment and create a discriminatorily abusive and hostile working environment.

78. The harassment was so severe that it caused Plaintiff to suffer extreme anxiety and stress, requiring hospitalization.

79. Defendant is liable for Stubbs' conduct because Stubbs was Plaintiff's direct supervisor acting within the scope of his employment.

80. Defendant had actual knowledge of the harassment through Plaintiff's complaints to management and corporate yet failed to take prompt and effective remedial action to stop the harassment.

81. Defendant's investigation was inadequate, biased, and designed to protect the harasser rather than the victim.

82. Defendant's failure to take appropriate corrective action allowed the hostile work environment to continue and intensify.

83. A reasonable person in Plaintiff's position would have found the work environment to be hostile and abusive.

84. Immediately following Plaintiff's rejection of the sexual advance, Stubbs took a tangible adverse employment action against her, including increasing her workload and removing access to workplace amenities.

85. Plaintiff subjectively perceived the work environment to be hostile and abusive.

86. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer significant damages, including but not limited to:

    a. Severe emotional distress, anxiety, and mental anguish;

    b. Humiliation and embarrassment;

    c.    Physical manifestations of emotional distress requiring medical treatment;

    d.    Loss of enjoyment of life; and

    e.    Other economic and non-economic damages.

87. Defendant's conduct was willful, wanton, malicious, and conducted with reckless indifference to Plaintiff's federally protected rights.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant on Count I, and award her the following relief:

  a. Compensatory damages for emotional distress and other non-economic losses;

  b. Punitive damages;

  c. Pre-judgment and post-judgment interest as allowed by law;

  d. Costs and reasonable attorneys' fees; and

  e. Such other and further relief as the Court deems just and proper.

### COUNT II
### QUID PRO QUO SEXUAL HARASSMENT
### (Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.)

88. Plaintiff incorporates as though realleged paragraphs 1 – 72 of the Complaint.

89. Plaintiff is a member of a protected class based on her sex (female).

90. Plaintiff was subjected to unwelcome sexual harassment of a quid pro quo nature by her direct supervisor, Isaac Stubbs.

91. On or about July 4, 2024, Stubbs explicitly conditioned workplace benefits on Plaintiff's submission to his sexual advances when he touched Plaintiff's shoulder and stated: "If you ever need anything, come see me as it's a favor for a favor."

92. Immediately following Plaintiff's rejection of the sexual advance, Stubbs took a tangible adverse employment action against her, including increasing her workload and removing access to workplace amenities.

93. This statement, in context with Stubbs' prior unwanted touching and sexually suggestive comments, constituted an explicit quid pro quo sexual proposition.

94. Stubbs was in a position of authority over Plaintiff as her direct supervisor and had the power to affect the terms and conditions of her employment, including work assignments, break schedules, access to workplace amenities, and recommendations regarding her continued employment.

95. Defendant was aware that Stubbs had previously been investigated and disciplined for sexually harassing other female employees prior to the incidents involving Plaintiff.

96. Despite this knowledge of Stubbs' pattern of sexual harassment, Defendant failed to take adequate precautions to protect Plaintiff and other female employees from his predatory conduct.

97. Defendant's failure to remove Stubbs from his supervisory position, despite his history of sexual harassment, demonstrates deliberate indifference to the safety and wellbeing of female employees under his supervision.

98. Plaintiff rejected Stubbs' quid pro quo sexual advance by brushing his hand off her shoulder and refusing to engage with his inappropriate conduct.

99. Stubbs' quid pro quo harassment was based on Plaintiff's sex and constituted discrimination in violation of Title VII.

100. Defendant is strictly liable for Stubbs' quid pro quo harassment because Stubbs was Plaintiff's supervisor and his harassment resulted in a tangible employment action (Plaintiff's termination).

101. Alternatively, even if no tangible employment action occurred, Defendant is liable because it failed to exercise reasonable care to prevent and promptly correct the sexually harassing behavior, and Plaintiff reasonably attempted to avoid harm by reporting the harassment through Defendant's internal complaint procedures.

102. Defendant's inadequate response to Plaintiff's complaints—including management's dismissive attitude, biased investigation, and failure to discipline the harasser—demonstrates that Defendant failed to exercise reasonable care to prevent and correct the harassment.

103. As a direct and proximate result of Defendant's unlawful quid pro quo harassment, Plaintiff has suffered and continues to suffer significant damages, including but not limited to:

    a. Lost wages and benefits;

    b. Loss of earning capacity;

    c. Severe emotional distress, anxiety, and mental anguish;

    d. Humiliation and embarrassment;

    e. Physical manifestations of emotional distress requiring medical treatment;

    f. Loss of enjoyment of life; and

    g. Other economic and non-economic damages.

104. Defendant's conduct was willful, wanton, malicious, and conducted with reckless indifference to Plaintiff's federally protected rights.

    **WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant on Count II, and award her the following relief:

    a. Back pay and front pay;

    b. Compensatory damages for emotional distress and other non-economic losses;

    c. Punitive damages;

    d. Pre-judgment and post-judgment interest as allowed by law;

    e. Costs and reasonable attorneys' fees; and

    f. Such other and further relief as the Court deems just and proper.

## COUNT III
## RETALIATION WITH ADVERSE EMPLOYMENT ACTION
### (Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.)

105. Plaintiff incorporates as though realleged paragraphs 1 – 72 of the Complaint.

106. Plaintiff engaged in protected activity under Title VII by:

    a. Rejecting Stubbs' unwelcome sexual advances;

    b. Opposing unlawful sexual harassment by complaining to Hotel General Manager Stephen Demny and the vessel's Captain; and

    c. Reporting the sexual harassment to Defendant's corporate office through the Crewing department.

107. Plaintiff had a good faith, objectively reasonable belief that Defendant was engaged in unlawful employment practices prohibited by Title VII.

108. In fact, Defendant was engaged in unlawful employment practices, as Plaintiff was subjected to severe sexual harassment and quid pro quo harassment by her supervisor.

109. Defendant, through its managers and agents, was aware of Plaintiff's protected activity.

110. Following Plaintiff's protected activity, Defendant subjected Plaintiff to materially adverse employment actions, including:

    a. Termination of Plaintiff's employment;

  b. Failure to reinstate Plaintiff to her position despite repeated requests and assurances that she would receive a new assignment;

  c. Being sent home under the guise of "safety" while never being provided another work opportunity;

  d. Loss of all wages, benefits, and employment opportunities with Defendant;

  e. The retaliatory removal of her refrigerator, which she needed for storing medication;

  f.   The retaliatory removal of the employee microwave by having its cord cut;

  g. The retaliatory assignment of a significantly heavier workload, forcing her to clean 12 rooms plus the largest public spaces, while other housekeepers had only 7-8 room; and

  h. The retaliatory requirement to work during her scheduled breaks and being yelled at by Stubbs when she attempted to take a break [See Paragraphs 72, 73].

111. A reasonable employee would have been dissuaded from making or supporting a charge of discrimination based on the adverse actions taken against Plaintiff.

112. Plaintiff's protected activity was a but-for cause of the adverse employment actions taken against her.

113. The temporal proximity between Plaintiff's complaints of harassment (early to mid-July 2024) and her termination (July 9, 2024, followed by permanent failure to reassign) demonstrates the causal connection between her protected activity and the adverse employment action.

114. Defendant's stated reason for Plaintiff's termination—"performance"—is pretextual because:

  a. Plaintiff was never informed her job was in jeopardy due to performance until after she reported harassment;

    b. Defendant had hired Plaintiff and allowed her to continue working until she reported harassment;

    c. The alleged "performance issues" were fabricated or exaggerated as a pretext for retaliation;

    d. Other employees with similar or worse performance issues were not terminated;

    e. Management emails demonstrate that Plaintiff was characterized as creating a "toxic work environment" through her "baseless accusations," revealing the true retaliatory motive; and

    f. Management blamed Plaintiff for reporting harassment rather than addressing the harasser's conduct.

115. The decision to terminate Plaintiff's employment and not reassign her was made in retaliation for her protected opposition to sexual harassment.

116. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered and continues to suffer significant damages, including but not limited to:

    a. Lost wages and benefits;

    b. Loss of earning capacity;

    c. Severe emotional distress, anxiety, and mental anguish;

    d. Humiliation and embarrassment;

    e. Damage to professional reputation;

    f. Loss of enjoyment of life; and

    g. Other economic and non-economic damages.

117. Defendant's retaliatory conduct was willful, wanton, malicious, and conducted with reckless indifference to Plaintiff's federally protected rights.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant on Count III, and award her the following relief:

a. Reinstatement or front pay in lieu of reinstatement;

b. Back pay with prejudgment interest;

c. Compensatory damages for emotional distress and other non-economic losses;

d. Punitive damages;

e. Pre-judgment and post-judgment interest as allowed by law;

f. Costs and reasonable attorneys' fees; and

g. Such other and further relief as the Court deems just and proper.

## COUNT IV
## RETALIATORY HOSTILE WORK ENVIRONMENT
### (Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.)

118. Plaintiff incorporates as though realleged paragraphs 1 – 72 of the Complaint.

119. Plaintiff engaged in protected activity under Title VII by rejecting unwelcome sexual advances and reporting sexual harassment to management and corporate.

120. Following Plaintiff's protected activity, Defendant subjected Plaintiff to a retaliatory hostile work environment that was sufficiently severe and pervasive to alter the terms and conditions of her employment.

121. The retaliatory hostile work environment included, but was not limited to:

a. Removal of Plaintiff's refrigerator, which she needed for storing food and medicine;

b. Removal of access to the microwave, preventing Plaintiff from heating meals;

c. Assignment of significantly heavier workloads compared to other housekeepers (12 rooms plus the largest public spaces versus 7-8 rooms for others);

d. Being required to work during scheduled breaks;

  e. Being yelled at by Stubbs for taking a break;

  f. Being subjected to gossip and ridicule by managers who dismissed her complaints;

  g. Being told to "push through" the harassment;

  h. Management characterizing her legitimate complaints as "baseless accusations";

  i. Being blamed for creating a "toxic work environment" when she was the victim;

  j. Being isolated and ostracized by management and coworkers;

  k. Receiving no support or empathy from management; and

  l. Being treated as if her complaints were invalid and unworthy of serious attention.

122. These retaliatory actions, taken together, created a hostile, intimidating, and offensive work environment that a reasonable employee would find intolerable.

123. The retaliatory hostile work environment was so severe that it materially adversely affected the terms, conditions, and privileges of Plaintiff's employment and resulted in her hospitalization.

124. The retaliatory hostile work environment would dissuade a reasonable worker from making or supporting a charge of discrimination.

125. Plaintiff's protected activity was a but-for cause of the retaliatory hostile work environment to which she was subjected.

126. Defendant had actual knowledge of the retaliatory hostile work environment through Plaintiff's repeated complaints, yet failed to take prompt and effective remedial action.

127. The retaliatory hostile work environment directly caused Plaintiff's hospitalization on July 9, 2024, demonstrating the severe impact of Defendant's unlawful conduct.

128. The stress and anxiety caused by the retaliatory hostile work environment rendered Plaintiff's continued employment intolerable, contributing to her termination.

129. As a direct and proximate result of Defendant's retaliatory hostile work environment, Plaintiff has suffered and continues to suffer significant damages, including but not limited to:

    a. Severe emotional distress, anxiety, and mental anguish;

    b. Physical manifestations of emotional distress requiring medical treatment and hospitalization;

    c. Humiliation and embarrassment;

    d. Loss of enjoyment of life; and

    e. Other economic and non-economic damages.

130. Defendant's conduct in creating and maintaining a retaliatory hostile work environment was willful, wanton, malicious, and conducted with reckless indifference to Plaintiff's federally protected rights.

    **WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant on Count IV, and award her the following relief:

    a. Back pay and front pay;

    b. Compensatory damages for emotional distress and other non-economic losses;

    c. Punitive damages;

    d. Pre-judgment and post-judgment interest as allowed by law;

    e. Costs and reasonable attorneys' fees; and

    f. Such other and further relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

131. Plaintiff hereby demands a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

    Respectfully Submitted this 13th day of November, 2025

<u>/s/ Frank M. Malatesta, Esq.</u>
Frank M. Malatesta, Esq.
Florida Bar No.: 0097080
MALATESTA LAW OFFICE
871 Venetia Bay Blvd., Ste. #220
Venice, FL 34285
Telephone No.: (941) 256-3812
Fax No.: (888) 501-3865
Email Address: Frank@Malatestalawoffice.com
Attorney for Plaintiff